CITY OF WHITEHALL ex rel. FENNESSY, Appellee,

v.

BAMBI MOTEL, INC., and Stew Banks, Appellants.

[Cite as *Whitehall ex rel. Fennessy v. Bambi Motel, Inc.* (1998), 131 Ohio App.3d 734.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 98AP–384.

Decided Dec. 29, 1998.

736

*Charles D. Underwood,* Whitehall City Attorney, and *Charles W. McGowan,* Assistant City Attorney, for appellee city of Whitehall.

*Betty D. Montgomery,* Attorney General, and *Barbara Serve,* Assistant Attorney General, for appellee State Fire Marshall.

*Daniel J. Igoe; Whiteside & Whiteside* and *Alba L. Whiteside,* for appellants.

LAZARUS, Judge.

Defendants-appellants, the Bambi Motel, Inc., and Stewart Banks, appeal from the April 10, 1996 agreed permanent injunction and the March 3, 1998 decision and entry of the Franklin County Municipal Court, Environmental Division, denying appellants' Civ.R. 60(B) motion to set aside the April 10, 1996 agreed permanent injunction. For the reasons that follow, we affirm.

Appellant, the Bambi Motel, Inc. ("motel"), owns and operates a motel on East Main Street in Whitehall, Ohio. Appellant Stewart Banks is president of the corporation. On November 22, 1995, plaintiff-appellee, the city of Whitehall ("city"), initiated this action against appellants alleging numerous structural defects and violations of the fire code and other ordinances. In addition, the city claimed illegal drug activity was occurring on the premises. The city moved for a preliminary and permanent injunction to compel compliance with building, zoning, and licensing law, and to have the business closed and the premises vacated as a public nuisance.

On December 5, 1995, appellants, represented by attorney Louis J. Chodish, and the city entered into extensive off-the-record discussions with the trial court. As a result of those discussions, the trial court prepared an agreed entry, which was journalized on December 7, 1995. The entry stated that there existed life-threatening violations of the building and fire codes of the city of Whitehall. Consequently, appellants were to immediately vacate the motel and to begin to remedy the life-threatening violations. If the violations were remedied to the satisfaction of Captain Tilton of the city's fire department, the motel could re-open.

On January 26, 1996, the trial court conducted a hearing where it was determined that appellants were represented by attorneys Mr. Fagin, Mr. Croushore, and Mr. Chodish. The trial court also determined that the life-threatening violations in the majority of the units had been cured and, therefore, the trial court permitted re-occupancy of most of the units. The city also agreed not to proceed on the portion of its complaint alleging nuisance activities as a result of illicit drug activities and other criminal activities.

On March 22, 1996, Chodish filed, and the trial court granted a motion asking to withdraw as attorney of record. On April 1, 1996, Croushore filed a motion to continue the hearing scheduled for April 2, 1996. Also on April 2, 1996, Fagin filed a motion for leave to withdraw as counsel.

The hearing on the city's request for permanent injunctive relief went forward on April 2, 5, and 9, 1996. Attorney Croushore represented the motel, and appellant Stewart Banks represented himself. During the April 9, 1996 hearing, while still in the city's case, an off-the-record discussion occurred among the trial court, counsel for the parties, and Banks. After that discussion, the trial court went back on the record and made three findings of fact, that Banks, counsel for the motel, and counsel for the state agreed were stipulated. The parties also agreed that based upon those findings of fact, the motel would be vacated and razed or Banks would make a good-faith effort to sell the property.

The trial court stated:

"THE COURT: After considerable discussion among the parties, the following situation arises. At this point the Court makes three findings of fact: One, that the Bambi Motel has allowed transient guests for a period of more than—has allowed—that the Bambi has maintained sleeping accommodations—that the Bambi has offered sleeping accommodations for pay to transient guests who have stayed there for a period of more than 30 days. Or, put another way, if that's not clear, there have been transient guests staying at the Bambi, and their stays have been longer than 30 days. And this has been going on since, at least, 1992.

"Finding of fact two, the Bambi has been operating as an apartment house since, at least, 1992.

"Fact three, the Bambi did not have a motel and/or hotel license issued pursuant to Chapter 3731 of the Revised Code by the State Fire Marshal for the year 1994.

"With those three findings of fact, what is agreed to among the parties is this: That a week from today, by April 16, all occupants of the Bambi will be gone with the exception of Mr. Stewart Banks who may continue to live there and maintain his residence until July 9. In other words, Mr. Banks can stay there for the next 90 days, with the 90-day period ending July 9.

"By July 9, it is agreed that the Bambi will be either razed, that is to say, torn down and taken and all structures clean to grade, or, two, the Bambi will have been sold or Mr. Banks will be able to demonstrate a good-faith effort to sell the property by demonstrating he has retained a licensed real estate broker and is actively advertising and actively having the facility marketed on the market for sale."

The trial court also made a preliminary conclusion of law that based on the stipulated facts, the motel had lost its status as a nonconforming use under the zoning laws and could no longer operate as a motel in that location. The trial court gave counsel for the motel an opportunity to research the law on the nonconforming use issue, stating:

"Mr. Croushore has asked the Court for an opportunity to search the law. And if Mr. Croushore finds there exists law which would suggest the Court is erroneous in it's preliminary conclusion of law, the Court would entertain such arguments.

"At this point, the Court will list a miscellaneous hearing on its docket for 3 p.m., April – the Court needs to give a tickle date by which time it will remind itself if it has not heard from Mr. Croushore whether Mr. Croushore has anything to tell the Court. I think it's agreed we give Mr. Croushore seven days to search the law.

"MR. UNDERWOOD: It's agreed by. I hope it can also be agreed that plaintiff doesn't waive any rights under its complaint in response to whatever Mr. Croushore comes up with.

"THE COURT: That is correct. If Mr. Croushore can come up with law that convinces the Court the Court is wrong, then we schedule a continuation of this full-blown hearing to continue to proceed with plaintiff's case in chief in its effort to seek a complaint for permanent injunctive relief.

"This agreement in no way waives anybody's right to assert its claim or make its defenses.

"Do you agree with what we have said?

"MR. UNDERWOOD: Yes, but I want to clarify. Is this – Are these three findings of facts stipulated between the parties?

"MR. CROUSHORE: Yes. The findings of fact are stipulated between the parties."

The trial court memorialized the findings of fact (but not the preliminary conclusion of law) in an agreed permanent injunction, journalized on April 10, 1996. Copies were mailed to all counsel and to Banks. Croushore never

submitted any legal authority to the trial court on the issue of whether the motel had lost its status as a nonconforming use.

The city initiated contempt proceedings against appellants on July 18, 1996, and again on January 31, 1997. On April 8, 1997, after several hearings in which appellants were represented by new counsel, the trial court found appellants to be in contempt. Appellants appealed the judgment, and this court affirmed. *Whitehall v. Bambi Motel* (Dec. 18, 1997), Franklin App. No. 97APC04–539, unreported, 1997 WL 781900.

On April 9, 1997, appellants, represented by new counsel, filed a motion to vacate judgment of April 10, 1996. The trial court conducted an evidentiary hearing on appellants' motion on November 19, 1997, and on March 3, 1998, the trial court denied the motion to set aside the agreed permanent injunction.

On April 1, 1998, appellants appealed from both the April 10, 1996 agreed permanent injunction and the March 3, 1998 denial of the motion to set aside the agreed permanent injunction, assigning as error the following:

1. "The Trial Court erred in rendering its Order of April 10, 1996 by making an erroneous conclusion of law which is not supported by the 'Purported Stipulated Findings of Fact'

2. "The Trial Court erred in denying Appellants their right of due process of law during the proceedings on April 5, 1996 and April 9, 1996.

3. "The Trial Court erred in determining that the 1995 Whitehall Zoning Ordinance changing a motel from a 'Permitted Use' to a 'Special Permit Use' terminated the Bambi Motel's right to operate because it did not have a 1994 motel license issued to it.

4. "The Trial Court erred and abused its discretion in not granting Appellant's Motion to Vacate.

4(A). "The Trial Court erred and abused its discretion in finding that Appellants did not have a meritorious defense or claim to present if the 60(B) Motion was granted.

4(B). "The Trial Court erred and abused its discretion in finding the Motion to Vacate was not brought within a reasonable time."

In their first three assignments of error, appellants present their direct appeal of the agreed permanent injunction of April 10, 1996. Since appellants did not file their notice of appeal from the April 10, 1996 order until April 1, 1998, we must first address the issue of whether the appeal from the agreed permanent injunction is timely.

■ Appellants claim the time for filing their notice of appeal pursuant to App.R. 4(A) never began to run because the trial court failed to comply with Civ.R. 58(B). We agree. Upon review of the record, we find service of the agreed permanent injunction was not made in compliance with Civ.R. 58(B) because the entry does not contain a notation to the clerk to serve appellants with notice of the judgment, and the clerk did not enter an entry in the appearance docket noting the service of the entry on appellants.

■ The city, however, argues the appeal is untimely because Banks admitted receiving the document and there were subsequent contempt proceedings based upon the agreed permanent injunction. We disagree. Appellants' actual knowledge of the agreed permanent injunction is insufficient to begin the running of the time for appeal in the absence of formal notice in compliance with Civ.R. 58(B). *Welsh v. Tarentelli* (1992), 76 Ohio App.3d 831, 833–834, 603 N.E.2d 399, 400–401; *Britford v. Duncan* (Nov. 12, 1993), Franklin App. No. 93AP–385, unreported, 1993 WL 473266. The thirty-day time limit for filing the notice of appeal does not begin to run until the later of (1) entry of the judgment or order appealed if the notice mandated by Civ.R. 58(B) is served within three days of the entry of the judgment; or (2) service of the notice of judgment and its date of entry if service is not made on the party within the three-day period in Civ.R. 58(B). Here, the trial court never endorsed upon the judgment entered April 10, 1996, the required "direction to the clerk to serve upon all parties * * * notice of the judgment and its date of entry upon the journal" as mandated by Civ.R. 58(A). The parties may have received copies of the judgment, but receiving a copy of the judgment is not enough. Service of both the notice of the judgment and its date of entry upon the journal is required. Even then, the time for appeal does not start to run until the clerk makes a notation of the service in the appearance docket. Civ.R. 58(B). Here, the clerk was not directed to give the required notice or make the necessary notation in the appearance docket. Because of this, the time for appeal of the April 10, 1996 agreed permanent injunction *never began to run.* Where the trial court never instructed the clerk to send notices to the parties and where no notices were sent in compliance with Civ.R. 58(B), the appeal is deemed timely under App.R. 4(A). *Lamberson v. State Farm Mut. Auto. Ins. Co.* (Aug. 25, 1994), Franklin App. No. 94APE02–274, unreported, 1994 WL 463785. Accordingly, the appeal from the April 10, 1996 agreed permanent injunction was timely filed. We now turn to the merits of the appeals.

In their first assignment of error, appellants claim that their acquiescence to the agreed permanent injunction was prompted by the trial court's ruling to the effect that if sleeping accommodations are rented to transient guests for more than thirty days, the structure is an apartment house rather than a motel.

Appellants also claim that the stipulated facts and the trial court's ruling were based upon the erroneous conclusion of law that the "Bambi can no longer operate as a motel in that location because these findings of fact cause it to lose its legal status as a nonconforming use."

Appellants contend that the trial court erroneously concluded that permitting a guest to rent a motel room for one week at a time for more than thirty days converted the building from a motel to an apartment house. Appellants argue that by offering accommodations for one week and then re-renting for successive periods of one week, guests could stay in excess of thirty days without converting the building from a motel to an apartment house.

 Had appellants not entered into stipulated facts, their argument might be material. R.C. 3731.01(A)(1) defines a "hotel" as "[a]ny structure consisting of one or more buildings, with more than five sleeping rooms kept, used, maintained, advertised, or held out to the public to be a place where sleeping accommodations are offered for pay to transient guests for a period of thirty days or less." While appellants could have challenged the determination that the motel was operating as an apartment house, instead, they stipulated on the record, and in the presence of the trial court, that "Defendant Bambi, Inc., continuously since at least 1992, has operated as an apartment house." (Agreed permanent injunction.) A stipulation, once entered into, filed and accepted by the court, is binding upon the parties and is a fact deemed adjudicated for purposes of determining the remaining issues in the case. *Horner v. Whitta* (Mar. 16, 1994), Seneca App. No. 13–93–33, unreported, 1994 WL 114881. A party who has agreed to a stipulation cannot unilaterally retract or withdraw from it. *Id.*

Even after announcing on the record the terms of the agreed permanent injunction, the trial court gave appellants seven days to research the law, stating, "This agreement in no way waives anybody's right to assert its claim or make its defenses." The trial court indicated it would put a 3 p.m. April 18, 1996 tickler date on its calendar to determine if Croushore concluded anything about his independent search of the law. After the April 9, 1996 hearing, the trial court prepared the agreed permanent injunction and sent it to the clerk who journalized it on April 10, 1996. Although the trial court did not wait until the April 18, 1996 tickler date to put on its order, the clear implication of the trial court's statement was that if appellants came forward with some legal authority in support of their interpretation of the law, the trial court would reconsider its ruling, based on the proposed conclusion of law, that the motel had lost its right to operate as a motel. Although appellants apparently disagreed with the trial court's proposed conclusion of law that the Bambi had lost its right to continue to use the property as a nonconforming use, appellants never submitted any authority to the trial court before the April 18, 1996 deadline to support their

position. Appellants thus waived the opportunity to present that defense and to have the trial court reconsider its ruling and have the agreed permanent injunction set aside.

At oral argument, counsel for appellants argued that appellants did not actually agree to the terms of the permanent injunction, *i.e.*, the razing or selling of the motel. We find that the record indicates otherwise. The trial court stated on the record at the April 9, 1996 hearing that the parties agreed to the terms of the injunction. Appellants did not object to the trial court's characterization of the parties' agreement. While the terms of the injunction are admittedly harsh, neither Banks nor counsel for the motel raised an objection to those terms. Nor did they seek to have the injunction set aside on the basis that the motel had the right to continue to operate as a nonconforming use. Therefore, it is clear from a review of the record that as of April 9, 1996, appellants agreed to the findings and the terms of the agreed permanent injunction. The first assignment of error is not well taken.

In their second assignment of error, appellants argue that the trial court denied appellants due process of law by (1) requiring appellants to proceed with inadequate trial counsel by allowing withdrawal of Chodish and Fagin in violation of Loc.R. 3 of the Municipal Court of Franklin County, (2) not allowing appellants to present their own witnesses, (3) not allowing appellants to finish cross-examining the city's witnesses, and (4) not allowing counsel for appellants to research the law as it had expressly announced during the April 9, 1996 hearing.

■ With respect to the withdrawal of counsel, Banks made no objection to the trial court's decision to allow the request. Moreover, Banks indicated on the record that he had a strategic reason for choosing to have Croushore represent the motel and Banks represent himself. Because he was familiar with all the facts, Banks wanted to cross-examine witnesses himself. Having raised no objection to the withdrawal of trial counsel and being unable to show prejudice from the strategic decision to represent himself, the argument is not well taken.

■ With respect to the claim that appellants were not permitted to complete cross-examination and call their own witnesses, we find nothing in the record that indicates any impropriety in the decision to go off the record and conduct negotiations culminating in the agreed permanent injunction. As discussed under the first assignment of error, appellants were given seven days to research the law and raise any defense. They did not submit any legal authority to the trial court, nor did they object in any way to the trial court entering judgment before the seven-day period had expired. As discussed under assignment of error one, appellants have not demonstrated any prejudice as a result of the trial court

entering judgment on April 10, 1996. The second assignment of error is not well taken.

In their third assignment of error, appellants contend that the motel did not lose its "grandfather" status to exist as a nonconforming but legal use as a motel pursuant to R.C. 713.15. That statute provides that a nonconforming use must be voluntarily discontinued for at least two years, unless otherwise validly provided by ordinance, before an entity's grandfather status is lost. As discussed under assignment of error one, on April 9, 1996, appellants stipulated that the motel had been operating as an apartment house since 1992. Based on this stipulation of fact, the trial court made a preliminary conclusion of law that the motel had lost its grandfather status, and the trial court gave appellants the opportunity to research the law and submit legal authority in support of the contrary position. Appellants did not avail themselves of this opportunity and, thus, became bound by the terms of the agreed entry. Unless set aside for good cause, the agreed permanent injunction is binding upon the parties and the trial court. The third assignment of error is not well taken.

Appellants' fourth assignment of error, although divided into three parts, asserts that the trial court abused its discretion in not granting the motion to vacate. Appellants filed their motion to vacate the judgment of April 10, 1996, on April 9, 1997. Appellants moved for vacation of the agreed permanent injunction on the grounds that they had been represented by incompetent counsel, that Banks entered into the agreed permanent injunction under duress, and that they had been deprived of the opportunity to present their defense due to incompetent counsel or an erroneous legal interpretation. Appellants presented evidence on their Civ.R. 60(B) motion at a full hearing before the trial court. The trial court found that appellants' motion was not timely and that they failed to present a meritorious defense.

To prevail on a motion brought under Civ.R. 60(B), the movant must demonstrate that (1) the party has a meritorious defense or claim to present if relief is granted, (2) the party is entitled to relief under one of the grounds stated in Civ.R. 60(B), and (3) the motion is made within a reasonable time. *GTE Automatic Elec. v. ARC Indus.* (1976), 47 Ohio St.2d 146, 1 O.O.3d 86, 351 N.E.2d 113, paragraph two of the syllabus. "The question of whether relief should be granted is addressed to the sound discretion of the trial court." *Rose Chevrolet, Inc. v. Adams* (1988), 36 Ohio St.3d 17, 20, 520 N.E.2d 564, 566. An abuse of discretion connotes conduct that is unreasonable, arbitrary, or unconscionable. *State ex rel. Richard v. Seidner* (1996), 76 Ohio St.3d 149, 151, 666 N.E.2d 1134, 1136 (citing *State ex rel. Edwards v. Toledo City School Dist. Bd. of Edn.* [1995], 72 Ohio St.3d 106, 107, 647 N.E.2d 799, 800–801).

■ As discussed under the first assignment of error, appellants were bound by the agreed permanent injunction unless they could establish a valid reason for vacating the order such as coercion. The trial court indicated that Banks's testimony was less than credible on this point. For example, at the November 17, 1997 hearing on the motion to vacate, Banks testified that he only put the motel up for sale because the trial court told him he had to. This was in direct contradiction to his testimony on April 5, 1996, in which Banks testified as follows:

"Q. Within the last three years, have you tried to sell the Bambi Motel?

"A. There is a sign on it right now.

"Q. Have you received any nibbles as to buying the motel?

"A. No, sir."

Banks also testified that for eighteen months, from April 10, 1996 continuously through November 19, 1997, he felt he was under duress by the trial court to say on the record that he agreed to the April 10, 1996 agreed permanent injunction. Yet during those eighteen months there were four hearings in which Banks was represented by new counsel at which he had many opportunities to raise the issue. He did not. Appellants' silence as to why this matter was never raised at any of the four contempt hearings held on the matter supports the conclusion that the agreed permanent injunction was actually agreed to by appellants. Accordingly, the trial court was within its discretion in finding that appellants had failed to meet their burden of presenting a meritorious defense.

■ Appellants' failure to raise the issue of duress until filing their Civ.R. 60(B) motion one day short of one year also goes to the issue of whether the motion was made within a reasonable time. As stated in the Staff Notes accompanying Civ.R. 60(B):

" * * * The rule provides that the motion for vacation of judgment 'shall be made within a reasonable time.' * * * The quoted language applies to all of the five grounds for vacation. Thus a party has the possible right to bring a motion to vacate the judgment on the grounds of newly discovered evidence up to one year after entry of judgment, but the motion is also subject to the 'reasonable time' provision. Hence if the newly discovered evidence was discovered one month after entry of judgment and a party might have made his motion at that time but waited until the last day before the year was up, the court in its discretion might hold that the motion was brought too late because although made within one year not made within a 'reasonable time.' For newly discovered evidence, for example, the outside limit is one year—or a shorter 'reasonable time.' "

Here, appellants offered no evidence at the hearing or in their memoranda to explain what necessitated the delay. Appellants were represented by counsel throughout the contempt proceedings that were affirmed by this court on appeal, yet they never raised the issue that they never really agreed to the April 10, 1996 agreed permanent injunction. "In the absence of any evidence explaining the delay, the movant has failed to demonstrate the timeliness of the motion." *Mount Olive Baptist Church v. Pipkins Paints* (1979), 64 Ohio App.2d 285, 289, 18 O.O.3d 319, 321, 413 N.E.2d 850, 854. Thus, it was within the sound discretion of the trial court to deny the motion as having been untimely and failing to present a meritorious defense. The fourth assignment of error is not well taken.

Based on the foregoing, the four assignments of error are overruled, and the judgment of the Franklin County Municipal Court is affirmed.

*Judgment affirmed.*

BOWMAN and PETREE, JJ., concur.