DECISION AND JUDGMENT ENTRY
Appellant Melinda S. Lewandowski appeals the decision of the Athens County Court of Common Pleas, Juvenile Division, which adjudicated her four-year-old child a neglected and dependent child and, ultimately, awarded permanent custody to Appellee Athens County Children Services. Although, based upon the record, we agree with the trial court's position that the grant of permanent custody was in the child's best interest, we must, nevertheless, reverse the judgment because the trial court did not follow the dictates of Civ.R. 58(B) and failed to even minimally comply with Juv.R. 29(D).
 I. The Proceedings Below
As is often the situation with juvenile matters, this case is factually distressing and procedurally complex.
 A. Background; The First Complaint
On February 27, 1997, Thomas Fennell, III (Thomas), was born to Appellant Melinda S. Lewandowski and Thomas Fennell, Jr. (Mr. Fennell). Thomas is the second of three children born to Ms. Lewandowski: he has an older half-sister, Samantha Baldridge, and a younger half-brother, Christopher Barnhart.
Thomas's relationship with his biological father virtually ended when the relationship between his father and Ms. Lewandowski concluded.
Subsequent to this relationship, Ms. Lewandowski became romantically involved with Paul Barnhart, with whom she conceived Christopher.
In April 1998, Ms. Lewandowski and her children were living with Mr. Barnhart when, by way of an emergency-custody order, Thomas first came into the care of Appellee Athens County Children Services (ACCS). Coupled with this order was a complaint, filed in the Athens County Court of Common Pleas, Juvenile Division, which asserted, inter alia, that Thomas was a dependent child.
Among other things, the following was set forth in the complaint: that Ms. Lewandowski, Mr. Barnhart, and the children did not actually own a home, but were instead sharing a trailer-home with another couple; that this couple had admitted to being involved in the sexual abuse of another child; that Thomas was sleeping on a bare mattress in a room filled with canned food, automobile tires, and a refrigerator; and that Ms. Lewandowski had failed to properly address Thomas's developmental delays.
Accordingly, the trial court adjudicated Thomas to be a dependent child and granted temporary custody to ACCS.
Over the course of the ensuing months, legal custody was ultimately granted to Ms. Lewandowski; however, ACCS remained continuously involved, closely monitoring Thomas's home life.
 B. The Basis for this Appeal: The Second Complaint
In April 2000, almost precisely two years after the first emergency-custody order was filed, Thomas was again brought into the care of ACCS by way of a second emergency-custody order. And, again, ACCS filed a complaint, this time asserting that Thomas was neglected, dependent, and abused.
This complaint was supported by the following factual allegations: that this was the second complaint filed concerning Thomas; that Ms. Lewandowski had failed to properly address Thomas's developmental delays; that there had been domestic violence between Ms. Lewandowski and Mr. Fennell in the presence of Thomas; that Ms. Lewandowski had been abusing alcohol and "possibly other illegal substances"; that Ms. Lewandowski had physically assaulted a neighbor; that Mr. Barnhart had verbally abused Thomas; that the household in which these children lived was "filthy" and "inappropriate" for the children; and that Mr. Barnhart had verbally accosted an ACCS caseworker.
On May 12, 2000, an adjudicatory hearing was held and Ms. Lewandowski's counsel stipulated that Thomas was a neglected and dependent child; the abuse allegation was dismissed. Accordingly, ACCS was awarded temporary custody pending the dispositional order.
On July 6, 2000, a dispositional hearing was held and ACCS was granted temporary custody of Thomas.
The next day, on July 7, 2000, the order of disposition — agreed to and signed by the parties' counsel in this matter — was issued. We note that the clerk of courts made no indication in the docketing sheet that the parties were served with a copy of this order.
 C. Motion for Permanent Custody
Shortly thereafter, ACCS filed a motion requesting permanent custody of Thomas. Hearings on the motion were held in April 2001.
At these hearings, testimony revealed, inter alia, the following: that since the filing of the second complaint, Ms. Lewandowski had lived in nineteen different places; that she had physically assaulted four different people, including her ACCS caseworker; that she had threatened to kill a former boyfriend's girlfriend; that she was in jail on at least three occasions; that she suffers from various mental-health afflictions; that she was terminated from her mental-health counseling due to non-compliance; that from August to November 2000, Ms. Lewandowski did not visit Thomas; that, since then, visitation was sporadic; that visitation completely ceased in January 2001; that Ms. Lewandowski was recently engaged to marry three different men, one of whom was Mr. Barnhart; that, despite intending to marry the men, she had only introduced Thomas to Mr. Barnhart; and, finally, that Thomas had made substantial progress, regarding his developmental delays, after his placement with the foster family selected by ACCS.
 D. Findings of Fact
In May 2001, Ms. Lewandowski and ACCS submitted proposed findings of fact and conclusions of law.
On July 30, 2001, the lower court issued its judgment entry on the motion, awarding ACCS permanent custody of Thomas. In so doing, the trial court adopted, word-for-word, ACCS's proposed findings of fact and conclusions of law. The findings of fact included those factual allegations set forth in the 1998 complaint, the 2000 complaint, and at the hearings for the permanent-custody motion.
 II. The Appeal
Subsequently, on August 13, 2001, Ms. Lewandowski filed an appeal and assigned the following errors for our review.
First Assignment of Error:
 APPELLANT WAS DEPRIVED OF DUE PROCESS OF LAW DURING THE INITIAL ADJUDICATORY AND DISPOSITIONAL HEARINGS HELD ON MAY 12, 2000 AND JULY 6, 2000.
Second Assignment of Error:
 THE TRIAL COURT'S FAILURE TO EXERCISE INDEPENDENT JUDGMENT IN EVALUATING THE FACTS CONSTITUTES A DENIAL OF DUE PROCESS, AND IS AN ABUSE OF DISCRETION.
 A. Timeliness of the Notice of Appeal
Before addressing Ms. Lewandowski's First Assignment of Error, we must explore the threshold issue of whether argument relating to the May and July 2000 adjudicatory and dispositional orders is timely.
In this case, the notice of appeal was filed more than thirty days after the May and July 2000 adjudication and dispositional hearings in the trial court. However, Ms. Lewandowski asserts that the trial court failed to serve her a copy of this order.
Civ.R. 58(B) states, in pertinent part, the following:
 When the court signs a judgment, the court shall endorse thereon a direction to the clerk to serve upon all parties * * * notice of the judgment and its date of entry upon the journal. Within three days of entering the judgment upon the journal, the clerk shall serve the parties in the manner prescribed by Civ.R. 5(B) and note the service in the appearance docket. Upon serving the notice and notation of the service in the appearance docket, the service is complete.
(Emphasis added.) Civ.R. 58(B).
The Supreme Court of Ohio, as well as this Court and myriad other Ohio appellate courts, have interpreted Civ.R. 58(B) to mean, "that if the Civ.R. 58(B) notice is not completed within the [three-day] period provided in the rule, the time for filing the notice of appeal, pursuant to App.R. 4(A), does not commence until the service of notice is completed." Conley v. Conley (June 13, 2000), Athens App. No. 00CA17, unreported; see State ex rel. Hughes v. Celeste (1993) 67 Ohio St.3d 429,619 N.E.2d 412; accord Atkinson v. Grumman Ohio Corp. (1988),37 Ohio St.3d 80, 523 N.E.2d 851; Lipscomb v. London Correctional Inst. (1994), 96 Ohio App.3d 245, 644 N.E.2d 1079.
In the case sub judice, the docketing sheet is devoid of any entry from the clerk indicating that service of the judgment entry was made upon the parties. Further, there is no indication in the record that either Ms. Lewandowski or her counsel was served with notice of the entry within three days of the date it was issued. See, generally, State ex rel. Hughes v. Celeste, 67 Ohio St.3d at 429, 619 N.E.2d at 412; accord State ex rel. Pheils v. Pietrykowski (2001), 93 Ohio St.3d 460, 755 N.E.2d 893.
Nevertheless, ACCS argues the following: "counsel for appellant had actual notice of the disposition in this matter. Her signature was obtained on the original [j]ournal [e]ntry, and she had actual notice of the determination. Therefore Appellant is without excuse for not appealing * * * within the [thirty-day] statutorily required time period * * *."
It is indeed the case that Ms. Lewandowski's attorney signed the judgment entry and that Ms. Lewandowski had to know that the trial court held as it did — after all, her child was ordered to be placed in the temporary custody of ACCS. Nevertheless, the Supreme Court of Ohio has clearly held that actual knowledge of the judgment entry, in the absence of notice from the clerk of courts, is insufficient to begin the time running to file a notice of appeal. See, e.g., Gaeta v. Cleveland (1988), 39 Ohio St.3d 338, 530 N.E.2d 1316; accord Whitehall ex rel. Fennesy v. Bambi Motel, Inc. (1998), 131 Ohio App.3d 734, 741,723 N.E.2d 633, 670 (holding that "actual notice * * * is insufficient to begin the running of the time for appeal in the absence of formal notice in compliance with Civ.R. 58(B)"); Welsh v. Tarentelli (1992),76 Ohio App.3d 831, 603 N.E.2d 399 (holding that the time for appeal had not tolled because the clerk of courts did not comply with Civ.R. 58(B), despite the following facts: that the judgment entry was presented and signed by the appellant's counsel; that the appellant's counsel admitted to having actual knowledge of the entry; and that three years had elapsed since the entry was issued); see, generally, Burchard v. Sanders (Jan. 26, 2001), Hocking App. No. 00CA14, unreported; Evans v. Cole (June 11, 2001), Jackson App. No. 00CA17, unreported.
Further, ACCS argues that "[c]ounsel for appellant did not complain of the alleged error to the [t]rial [c]ourt at any time, and, therefore, has waived any complaint regarding the alleged lack of notice."
The Supreme Court of Ohio, in Atkinson v. Grumman Ohio Corp.,37 Ohio St.3d at 83, 523 N.E.2d 854, squarely rejected this argument as well:
 First, the issue could not possibly have been raised before the trial court because the issue arose only after the decision of the court had been made. The issue concerns the procedure for notifying the parties of a judgment after the trial court decision, and not any matter heard in the trial court. * * *. [Further,] in determining whether a constitutional issue not previously raised by the parties is to be decided by the court, the [State v. Awan (1986) 212 Ohio St.3d 120, 489 N.E.2d 277,] syllabus does not use preclusive language such as "will not" or "may not"; instead, it uses the discretionary language that the court "need not" hear the argument for the first time on appeal. The holding, while rejecting the claim that constitutionality is never waived, does not state that a constitutional issue first raised on appeal may never be considered.
Id. at 83, 523 N.E.2d 854.
We strongly agree with the reasoning and conclusion of the Atkinson case.
It simply defies common sense to require a party to preserve in the record an objection to an error which was made by the trial court after it had rendered its final decision in the matter. See id. We see no reason — and ACCS presented us with no such argument — to make an exception in this case.
Likewise, we agree with Atkinson's conclusion that a constitutional issue may be addressed for the first time on appeal.
The Supreme Court of Ohio has clearly framed the issue immediately before us as a constitutional one: "[t]he right to file an appeal * * * is a property interest and a litigant may not be deprived of that interest without due process of law." (Emphasis added.) Id. at paragraph one of the syllabus.
Interestingly, the sole case ACCS relied on to support waiver in this instance turns on the distinction between constitutional and non-constitutional issues introduced for the first time on appeal:
 We have been referred to no decision of this court holding that a judgment of conviction can be reversed for a cause * * * [that] was not complained of at a time when counsel had an opportunity to call it to the attention of the trial court in time to avoid or prevent it and where it does not affirmatively appear from the record that defendant was prejudiced thereby. It may be, as held in State v. Grisafulli, [(1939), 135 Ohio St. 87, 19 N.E.2d 645], that [waiver] may not be invoked "in a case which discloses the clear disregard of a constitutional prerogative" * * *, but this is not such a case. Any prerogative involved in the instant case would be merely one provided for by statute.
State v. Glaros (1960), 170 Ohio St. 471, 480, 166 N.E.2d 379, 386.
Thus, as was held in Atkinson, we find that it is proper for us to consider this issue for the first time on appeal. See, generally, State v. Awan, 212 Ohio St.3d at 120, 489 N.E.2d at 277.
Further, also in keeping with Atkinson, we find that the time for appealing the decision regarding the May and July 2000 adjudicatory and dispositional orders never began to run because the trial court failed to comply with Civ.R. 58(B). See Conley, supra; see, generally, Gaeta v. Cleveland, 39 Ohio St.3d at 530, N.E.2d at 1316.
Accordingly, we now turn to Ms. Lewandowski's arguments regarding the May and July 2000 adjudication and disposition of Thomas.
 B. The First Assignment of Error
In support of the blanket statement set forth in her First Assignment of Error, that she was "deprived of due process * * * during the initial adjudicatory and dispositional hearings," Ms. Lewandowski argues, inter alia, that the lower court erred by not complying with Juv.R. 29(D) and personally addressing her to ensure that she agreed with her counsel's admission that Thomas was a neglected and dependent child.
Juv.R. 29(D) reads, in pertinent part, as follows:
 The court may refuse to accept an admission and shall not accept an admission without addressing the party personally and determining both of the following: (1) The party is making the admission voluntarily with understanding of the nature of the allegations and the consequences of the admission; (2) The party understands that by entering an admission the party is waiving the right to challenge the witnesses and evidence against the party, to remain silent, and to introduce evidence at the adjudicatory hearing.
(Emphasis added.) Juv.R. 29(D).
Thus, before a juvenile court may accept an admission made by an attorney, it must personally address the actual party to ensure that the admission was voluntarily and intelligently made; i.e., to determine whether the party understands the consequences of the admission. See In re Kimble (1996), 114 Ohio App.3d 136, 682 N.E.2d 1066; accord In re Beechler (1996), 115 Ohio App.3d 567, 685 N.E.2d 1257 (Wherein this Court analogized Juv.R. 29(D) to Crim.R. 11(C).); In re Jones (Apr. 13, 2000), Gallia App. No. 99CA4, unreported.
These protections apply as equally to parents as they do to juveniles. See, e.g., In re Smith (1991), 77 Ohio App.3d 1, 601 N.E.2d 45 (finding that a parent's admission to neglect in an action to terminate custody was invalid when the record establishes that the parents were not personally addressed by the trial court); accord In re Etter (1998),134 Ohio App.3d 484, 731 N.E.2d 694.
"The failure of a lower court to substantially comply with the requirements of Juv.R. 29 constitutes prejudicial error that requires a reversal of the adjudication in order to permit the party to plead anew." In re Beechler, 115 Ohio App.3d at 573, 685 N.E.2d at 1260; see In re Jones, supra.
Here, the record reveals no effort whatsoever by the trial court to comply with Juv.R. 29(D). In fact, ACCS concedes that the trial court did not substantially comply with Juv.R. 29(D). However, ACCS argues that this does not matter because the trial court was not required to comply with Juv.R. 29(D) in this case.
ACCS bases this conclusion on three arguments: (1) substantial compliance with Juv.R. 29(D) is not required for an abuse, neglect, or dependency adjudicatory proceeding; (2) the argument is waived because it was not properly preserved in the record below; and (3) regardless, there was enough evidence at the permanent-custody hearing to support the previous adjudication of Thomas as a neglected and dependent child.
We will address these arguments seriatim.
1. Substantial Compliance
ACCS argues that noncompliance with Juv.R. 29(D) is immaterial because adjudicatory proceedings do not involve the "loss of liberty," and, therefore, do not require substantial compliance with Juv.R. 29(D). We disagree.
The Supreme Court of Ohio has clearly stated that juvenile cases must be bifurcated: "The law commands that the proceedings be bifurcated into separate adjudicatory and dispositional hearings because the issues raised and the procedures used at each hearing differ." In re Baby Girl Baxter (1985), 17 Ohio St.3d 229, 233, 479 N.E.2d 257, 261; see, e.g., In re Sekulich, 65 Ohio St.2d at 13, 417 N.E.2d at 1014.
Simply put, the adjudicatory and dispositional phases of a juvenile case are analogous to the trial and sentencing phases of a criminal trial. See Juv.R. 2(B); see, generally, Giannelli, Ohio Juvenile Law (2001 Ed.) 253, Section 20.1.
Accordingly, the disposition of a child — which ACCS agrees does require substantial compliance — cannot be made without there first being an adjudication of that child. See, generally, Juv.R. 29(F)(2)(a); Giannelli, Ohio Juvenile Law (2001 Ed.) 254, Section 20.1; State v. Wylie (Aug. 4, 1983), Cuyahoga App. No. 45952, unreported (explaining that, absent a disposition, there is no prejudice to the child).
Thus, you cannot divorce one from the other: the dispositional hearing is entirely dependent on the adjucatory phase of the case. Therefore, the entire bifurcated case requires substantial compliance with Juv.R. 29(D). See Elmer v. Lucas County Children Services Board (1987),36 Ohio App.3d 241, 245, 523 N.E.2d 540, 544 ("Juv.R. 29(D) is * * * no less applicable in the adjucatory phase of a dependency proceeding than it is in a delinquency proceeding" (Emphasis added.)); In re Etter,134 Ohio App.3d at 484, 731 N.E.2d at 694; see, generally, Giannelli, Ohio Juvenile Law (2001 Ed.) 277, Section 20.9.
2. Waiver
ACCS also argues that compliance with Juv.R. 29(D) is not necessary in this case because "appellant did not complain of the procedure by which the Trial Court adopted the agreement reached, [thus] she waived such error and should be precluded from raising it at this late hour." Again, we disagree.
ACCS's argument embodies the long-recognized principle that the failure to draw the trial court's attention to possible error results in a waiver of the issue for purposes of appeal. See Goldfuss v. Davidson (1997),79 Ohio St.3d 116, 121, 679 N.E.2d 1099, 1103; accord Gallagher v. Cleveland Browns Football Co. (1996), 74 Ohio St.3d 427, 659 N.E.2d 1232; see, generally, In re Etter, 134 Ohio App.3d at 484, 731 N.E.2d at 694.
However, there is an equally well-established exception to this general rule: the plain-error doctrine.
The plain-error doctrine originated in criminal law: "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim.R. 52(B). Despite the absence of an analogous provision in the Rules for Civil Procedure, the Supreme Court of Ohio has clearly recognized the plain-error doctrine in the context of civil matters:
 The plain-error doctrine permits correction of judicial proceedings when an error is clearly apparent on the face of the record and is prejudicial to the appellant. * * * Although the plain-error doctrine is a principle applied almost exclusively in criminal cases, [we have] stated that the doctrine may also be applied in civil cases * * * if the error complained of `would have a material adverse affect on the character and public confidence in judicial proceedings.'
(Emphasis added.) Reichert v. Ingersol (1985), 18 Ohio St.3d 220, 223,480 N.E.2d 802, 805 (citations omitted); see, also, In re Etter,134 Ohio App.3d at 484, 731 N.E.2d at 694 (applying the plain-error doctrine in juvenile cases).
More recently, the Supreme Court of Ohio emphasized that this doctrine should only be used in exceptional circumstances:
 We do not hold that application of the plain error doctrine may never be appropriate in civil cases. However, we do reaffirm and emphasize that the doctrine is sharply limited to the extremely rare case involving exceptional circumstances where the error, left unobjected to at the trial court, rises to the level of challenging the legitimacy of the underlying judicial process itself.
(Emphasis sic.) Goldfuss v. Davidson, 79 Ohio St.3d at 122,679 N.E.2d at 1104.
We find such circumstances to exist in the present case.
The record in the instant case reveals, and the parties agree, that the trial court made no effort whatsoever to comply with Juv.R. 29(D).
In the face of facts and arguments similar to those in the case sub judice, the First District Court of Appeals held as follows:
 The magistrate's failure to even minimally comply with Juv.R. 29(D) raises the very real possibility that [the appellant] * * * did not fully understand her right to challenge the evidence as the state moved to terminate her parental rights. It bears emphasis that, as this court noted in [In re Meyer (Jan. 15, 1992), Hamilton App. Nos. C-910292 and C-910404, unreported], a waiver made without an understanding of the rights being forfeited constitutes a violation of basic due process. Failure to comply with Juv.R. 29(D), therefore, requires no further showing of prejudice: it is never harmless error. [See In re Lahmann (Dec. 24, 1996), Hamilton App. No. C-950790, unreported]. The magistrate's failure to substantially comply with Juv.R. 29(D) seriously damages the "basic fairness" and "integrity" of the underlying judicial process in this case. To apply [waiver] * * * would, we believe, only compound this unfairness and further impugn the integrity of the system by allowing the state to take permanent custody of a woman's children on a record demonstrating a denial of due process.
(Emphasis sic.). In re Etter, 134 Ohio App.3d at 493, 731 N.E.2d at 700.
We agree with this position and find that the trial court's failure to substantially comply with Juv.R. 29(D), in the case sub judice, "seriously damages the `basic fairness' and `integrity' of the underlying judicial process in this case." Id. Likewise, applying the waiver doctrine in this context serves only to "compound this unfairness and further impugn the integrity of the system by allowing the state to take * * * custody * * * on a record demonstrating a denial of due process." Id.
Further, we agree with the assessment of the First District Court of Appeals that failure to comply with Juv.R. 29(D) is necessarily prejudicial error. See In re Etter, 134 Ohio App.3d at 493,731 N.E.2d at 700. Thus, we also find that the trial court's failure to comply with Juv.R. 29(D), in this case, was not harmless error.
3. Evidence from Permanent-Custody Hearing
Finally, ACCS contends that "Assuming, arguendo, that substantial compliance was not met, then there was clear and convincing evidence adduced at the hearing on permanent custody to show that * * * the children were abused, neglected, and dependent * * *." Again, we disagree.
Ohio law provides two means by which an authorized agency may obtain permanent custody. The agency may either: (1) request permanent custody as part of the initial abuse, neglect, or dependency proceeding; or (2) it may first obtain temporary custody or long-term foster care and thereafter file a motion for permanent custody. See R.C. 2151.353(A); see, generally, In re Massengill (1991), 76 Ohio App.3d 220,601 N.E.2d 206; Giannelli, Ohio Juvenile Law (2001 Ed.) 385, Section 27.8, and 401, Section 28.1.
In this case, ACCS sought permanent custody of Thomas based upon the latter grant of authority; specifically, it relied on R.C. 2151.415(A). R.C. 2151.415(A) is available only if the agency had temporary custody at the time it filed the motion requesting permanent custody. See R.C.2151.415(A) ("Any public children services agency * * * that has been given temporary custody of a child * * * shall file a motion with the court * * * requesting * * * [a]n order permanently terminating the parental rights of the child's parents." (Emphasis added.).).
ACCS's argument overlooks the fact that the motion for permanent custody was brought pursuant to R.C. 2151.415(A). R.C. 2151.415(A) applies only in the limited situation where there is first in place a proper grant of temporary custody. Without a prior grant of temporary custody, R.C.2151.415(A) does not provide a means for an agency to gain permanent custody of a child.
Accordingly, as we have found that the trial court's May and July 2000 adjudicatory and dispositional orders were erroneous, we, therefore, must also find that it was error to subsequently grant permanent custody of Thomas to ACCS pursuant to R.C. 2151.415(A).
Therefore, we SUSTAIN Ms. Lewandowski's First Assignment of Error. Her Second Assignment of Error is rendered moot based upon the foregoing.
III. Conclusion
Once we determined that the matter was properly before us because the trial court had failed to comply with Civ.R. 58(B), the paramount inquiry became: whether, if we found the previous orders to be erroneous, it would affect the current order of permanent custody with ACCS.
We found that the May and July 2000 adjudicatory and dispositional orders were erroneous because the trial court did not substantially comply with Juv.R. 29(D). Thus, ACCS was not properly granted temporary custody of Thomas.
Subsequently, ACCS filed a motion, pursuant to R.C. 2151.415(A), requesting permanent custody of Thomas.
As we explained, R.C. 2151.415(A) is available only if the agency had temporary custody at the time it filed the motion requesting permanent custody.
Thus, the trial court's grant of permanent custody was erroneous because the agency did not properly have temporary custody of Thomas at the time it filed its motion for permanent custody pursuant to R.C. 2151.415(A).
Accordingly, the answer to our principal inquiry is affirmative: the current custodial status of Thomas is affected by previous erroneous orders. Therefore, we must reverse the judgment of the lower court. See, generally, In re Beechler, 115 Ohio App.3d at 573, 685 N.E.2d at 1260; accord In re Jones, supra.
On remand, the trial court must hold new adjudicatory and dispositional hearings at which ACCS may request the form of custody it deems appropriate, notwithstanding the holding of this case, other applicable case-law, and relevant Ohio Revised Code provisions. The evidence previously presented at the hearings may be again considered. However, Ms. Lewandowski's admission to the facts of the April 2000 complaint is vacated.
It is with great reluctance, given the facts and circumstances present in this case, that we reverse the lower court's judgment. This Court certainly has no desire to prolong Thomas's ordeal. However, given the magnitude of the trial court's errors in this case, we must do so. See In re Etter, 134 Ohio App.3d at 493, 731 N.E.2d at 701.
Therefore, we REVERSE the judgment of the Athens County Court of Common Pleas, Juvenile Division, and REMAND this action for proceedings not inconsistent with this opinion.