OPINION
{¶ 1} Appellant Kelli Beltz nka Kelli Vocaire appeals the May 26, 2005, decision of the Common Pleas Court of Stark County, Domestic Relations Division, finding her in contempt for failure to pay child support.
 {¶ 2} Appellant Kelli Beltz nka Kelli Vocaire also separately appeals the January 12, 2001, judgment entry of the Common Pleas Court of Stark County, Domestic Relations Division, ordering her to pay child support. She claims that a copy of this judgment entry was never served upon her.
 {¶ 3} These two cases have been consolidated for purposes of this appeal.
 {¶ 4} These consolidated cases come to us on the accelerated calendar. App. R. 11.1, which governs accelerated calendar cases, provides, in pertinent part:
 {¶ 5} "(E) Determination and judgment on appeal. The appeal will be determined as provided by App. R. 11.1. It shall be sufficient compliance with App. R. 12(A) for the statement of the reason for the court's decision as to each error to be in brief and conclusionary form. The decision may be by judgment entry in which case it will not be published in any form."
 {¶ 6} This appeal shall be considered in accordance with the aforementioned rule.
 STATEMENT OF THE FACTS AND CASE {¶ 7} Appellant Kelli Beltz nka Kelli Vocaire and Appellee Charles Beltz, II were granted a Decree of Divorce on December 26, 1996. The divorce decree incorporated a separation agreement which provided that Appellant would be the residential parent, Appellee would have liberal visitation rights, and waived any order of child support for the parties' only daughter, Kelsey M. Beltz, born November 30, 1994.
 {¶ 8} Shortly after the divorce, both parties began to contest the custody of Kelsey and litigation commenced with each side filing post-decree motions for custody.
 {¶ 9} Appellant failed to appear for two hearings.
 {¶ 10} By Order dated February 11, 1998, the trial court made a temporary award of custody to Appellee and ordered Appellant to pay child support in the amount $384.00 per month.
 {¶ 11} On February 18, 1998, Appellant Vocaire moved the court to vacate said order. Appellee Beltz, at this time, filed a motion for custody.
 {¶ 12} A hearing on Appellant Vocaire's motion to vacate was scheduled for April 1998. The trial court took Appellant Vocaire's motion to vacate under advisement. No action was taken on Appellee Beltz's custody motion.
 {¶ 13} In July, 1998, Appellee Beltz filed a motion for contempt for failure to pay child support and a hearing was scheduled for October. On October 7, 1998, the trial court held a hearing on the issue of contempt. Appellant Vocaire did not appear at said hearing. The trial court found Appellant Vocaire in contempt and scheduled sentencing for November. In that same entry, the trial court overruled Vocaire's motion to vacate the trial court's February 11, 1998, Order. Moreover, the trial court awarded full custody to Appellee Beltz and suspended Appellant Vocaire's companionship rights until she complied with all court orders, "especially those re [sic] the psychologist." Finally, the trial court ordered Vocaire to pay $598 per month in child support.
 {¶ 14} Subsequent to said hearing, the trial court discovered that Appellant Vocaire had filed a petition in bankruptcy prior to the holding of such hearing on contempt. The trial court therefore vacated all portions of the October 7, 1998, Order which may have been stayed by the then pending bankruptcy petition, and dismissed Appellee Beltz's motion for contempt. The Order did not, however, disturb the part of the October Order which dismissed Appellant Vocaire's Motion to Vacate. Appellant Vocaire did not appeal this judgment entry.
 {¶ 15} In September 1999, Appellee Beltz requested a pretrial on his February 20, 1998, custody motion, which was still pending. The pretrial was cancelled at the request of the parties when they learned that Appellant Vocaire had been sentenced to prison for theft and passing bad checks.
 {¶ 16} A year later, Appellee Beltz again requested a final hearing on his February 20, 1998, custody motion. Appellant Vocaire was served with notice through her attorney, who had asked the trial court for permission to withdraw. The trial court prohibited such attorney from withdrawing until he had notified Appellant Vocaire of the date scheduled for the custody motion.
 {¶ 17} Appellee Beltz's motion for custody finally proceeded to trial on January 10, 2001. Appellant Vocaire was in prison at this time and therefore did not appear for this hearing.
 {¶ 18} In its Judgment Entry filed January 12, 2001, the trial court determined that Appellee Beltz had demonstrated a change of circumstances and that awarding him custody of the minor child would be in the child's best interest. The trial court continued Appellant Vocaire's $598-per-month child support obligation and also ordered her to pay $100 per month toward her arrearages once she was released from prison. The Entry indicates that Vocaire was sent a copy of the Entry by regular mail.
 {¶ 19} It is from this January 12, 2001, Judgment Entry that Appellant Vocaire prosecutes her appeal in case number 2005CA00194, which she claims is timely because she denies having been served.
 {¶ 20} On November 20, 2002, after being released from prison, Appellant Vocaire, did, however, file three motions to modify the January 12, 2001, Order: a motion to modify child support, a motion to modify parental rights and responsibilities, and a motion to modify visitation. Notably, none of these motions challenged the January 12, 2001, Order based upon an alleged failure of service, or on any other basis.
 {¶ 21} On the date her motions were scheduled for hearing, Appellant Vocaire failed to appear. The trial court overruled Appellant Vocaire's motions on May 14, 2003, and she appealed to this Court in case number 2003CA00215.
 {¶ 22} In a decision dated November 10, 2003, this Court affirmed the trial court's decision on two of the motions, but reversed and remanded to the trial court on the issue of visitation. In Appellant Vocaire's appeal, just as in the trial court, Vocaire made no attempt to challenge the trial court's January 12, 2001, on service grounds.
 {¶ 23} The trial court rescheduled Appellee Beltz's motion for contempt for May 2004. Before the hearing, however, Appellant Vocaire filed another petition in bankruptcy, causing the trial court to stay the contempt proceeding again.
 {¶ 24} The trial court rescheduled the contempt hearing for May 25, 2005.
 {¶ 25} Appellant Vocaire next filed an affidavit of prejudice in the Ohio Supreme Court seeking disqualification of the Honorable David E. Stucki. This was the third such affidavit filed against Judge Stucki; the first was denied by the Court in 1997, the second, filed in 2003, was also dismissed by the Court.
 {¶ 26} The contempt hearing went forward and was heard by a magistrate instead of proceeding in front of Judge Stucki. Appellant Vocaire failed to appear at said hearing. Although there was a discrepancy in the time for the hearing — the Entry showed 9:00 a.m. and the docket showed 1:00 p.m. — the magistrate specified in her order that on the day before, court personnel had notified Appellant Vocaire of the correct time. The trial court also observed that Appellant Vocaire acknowledged the time change in a request for a continuance faxed to the trial court immediately prior to the hearing. Finally, the trial court observed that Appellant Vocaire failed to appear at either 9:00 a.m. or 1:00 p.m. The trial court proceeded with the contempt hearing and found Appellant Vocaire guilty of criminal contempt for failure to pay child support and accumulating nearly $50,000 arrearages. The trial court sentenced her to 30 days in the Stark County Jail and set the imposition of sentence for July 6, 2005.
 {¶ 27} Appellant Vocaire did not file an objection to the Magistrate's Decision.
 {¶ 28} Prior to the imposition hearing held on July 6, 2005, the Ohio Supreme Court dismissed Appellant Vocaire's second affidavit of prejudice, writing that "[t]he case may proceed before Judge Stucki."
 {¶ 29} The imposition of sentence hearing was held in front of Judge Stucki, who wrote in an entry filed that day: "Service accomplished upon [Vocaire]. She has failed to appear today and has acknowledged service in faxes yesterday to both the court and Atty Pinhard." The trial court imposed the 30 day sentence.
 {¶ 30} Vocaire now appeals this judgment entry, which was assigned case number 2005CA00193, as well as the January 12, 2001, Judgment Entry, raising the following Assignments of Error:
 ASSIGNMENTS OF ERROR (Case No. 2005CA00193) {¶ 31} "I. THE TRIAL COURT ERRED BY FINDING APPELLANT IN CONTEMPT AND ORDERING APPELLANT TO SERVE 30 DAYS IN JAIL WITHOUT FIRST GRANTING HER AN OPPORTUNITY TO PURGE THE CONTEMPT.
 {¶ 32} "II. THE TRIAL COURT ERRED IN PROCEEDING FORWARD ON THE CONTEMPT HEARING WHERE APPELLANT DID NOT HAVE PROPER NOTICE AND OPPORTUNITY TO BE HEARD, AND THE SAME DENIED HER OF DUE PROCESS.
 {¶ 33} "III. THE TRIAL COURT ERRED IN PROCEEDING FORWARD IN THE HEARING BEFORE THE MAGISTRATE WHILE AND AFFIDAVIT OF PREJUDICE AND THE MATTER OF DISQUALIFICATION REMAINS UNDECIDED."
 (Case No. 2005CA00194) {¶ 34} "I. THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY FAILING TO SERVE A COPY OF THE MAGISTRATE'S DECISION ON APPELLANT AS REQUIRED UNDER CIVIL RULE 53(E)(1).
 {¶ 35} "II. WHERE NO MOTION FOR CHILD SUPPORT WAS FILED AND APPELLANT DID NOT HAVE NOTICE AND OPPORTUNITY TO BE HEARD ON THE MATTER OF THE ISSUANCE OF AN ORDER OF CHILD SUPPORT, THE TRIAL COURT'S ORDERS OF CHILD SUPPORT DENIED HER OF DUE PROCESS.
 {¶ 36} "III. THE TRIAL COURT ERRED IN ORDERING APPELLANT TO PAY CHILD SUPPORT WHERE THE COURT FAILED TO MAKE A DETERMINATION AS TO THE PARTIES' INCOMES AND BASED THE COMPUTATION OF SUPPORT UPON A PRIOR ORDER WHICH HAD BEEN VACATED.
 {¶ 37} "IV. WHERE APPELLANT FILED A MOTION TO VACATE THE INTERIM CHILD SUPPORT ORDER BASED UPON APPELLANT'S LACK OF NOTICE PRIOR TO THE ENTRY OF THE SAME AND FURTHER BASED ON THE LACK OF EVIDENCE IN SUPPORT THEREOF, THE TRIAL COURT ERRED IN FAILING TO RULE UPON THE PENDING MOTION AT FINAL HEARING ON THE MATTER."
 (Case No. 2005CA00193) I. {¶ 38} Appellant in her first assignment of error argues that the trial court abused its discretion in imposing a jail sentence because she was not given an opportunity to purge her contempt. We disagree.
 {¶ 39} A court may punish disobedience of its order pursuant to both R.C. 2705.02(A) and its inherent power to enforce its authority. Zakany v. Zakany (1984), 9 Ohio St.3d 192,459 N.E.2d 870, syllabus. A contempt order will not be reversed unless the trial court abused its discretion. State, ex rel.Ventrone, v. Birkel (1981), 65 Ohio St.2d 10, 11,417 N.E.2d 1249. An "abuse of discretion connotes that the court's attitude is unreasonable, arbitrary, or unconscionable." Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.
 {¶ 40} Contempt has been defined as the disregard for judicial authority. State v. Flinn (1982), 7 Ohio App.3d 294,455 N.E.2d 691. "It is conduct which brings the administration of justice into disrespect, or which tends to embarrass, impede or obstruct a court in the performance of its functions." WindhamBank v. Tomaszczyk (1971), 27 Ohio St.2d 55, 271 N.E.2d 815, paragraph one of the syllabus. When reviewing a finding of contempt, an appellate court applies an abuse of discretion standard. See State ex rel. Ventrone v. Birkel (1981),65 Ohio St.2d 10, 417 N.E.2d 1249.
 {¶ 41} Contempt may be either direct or indirect. In rePurola (1991), 73 Ohio App.3d 306, 310, 596 N.E.2d 1140. In addition, "[c]ontempt is further classified as civil or criminal depending on the character and purpose of the contempt sanctions." Purola at 311, 596 N.E.2d 1140. "Civil contempt is designed to benefit the complainant and is remedial in nature. * * * Thus, an individual charged with civil contempt must be permitted to appear before the court and purge himself of the contempt by demonstrating compliance with the court's order."State v. Miller, Holmes App. No. 02 CA 16, 2003-Ohio-948, ¶ 28, citing Purola, supra.
 {¶ 42} A sanction for civil contempt must allow the contemnor the opportunity to purge him or herself of contempt." O'Brien v.O'Brien, Delaware App. No. 2003-CAF-12069, 2004-Ohio-5881, ¶ 68, citing Burchett v. Miller (1997), 123 Ohio App.3d 550, 552,704 N.E.2d 636 (additional citations omitted).
 {¶ 43} In contrast, the punishment in a criminal contempt action generally consists of an unconditional prison sentence. Imprisonment for criminal contempt serves as punishment for a completed act of disobedience, vindicating the authority of the court. Brown v. Executive 200, Inc. (1980), 64 Ohio St.2d 250,253, 416 N.E.2d 610. Therefore, in order to constitute criminal contempt, a sanction must have an "overriding punitive purpose[.]" State v. Kilbane (1980), 61 Ohio St.2d 201, 206,400 N.E.2d 386.
 {¶ 44} This Court must therefore determine whether the Domestic Relations Division's sanction was criminal or civil in nature.
 {¶ 45} The pertinent test in distinguishing criminal and civil contempt is as follows: "what does the court primarily seek to accomplish by imposing sentence?" Shillitani v. U.S. (1966),384 U.S. 364, 370, 86 S.Ct. 1531, 16 L.Ed.2d 622.
 {¶ 46} In the case sub judice, trial court imposed an unconditional thirty-day jail sentence upon appellant. The trial court imposed this sentence strictly as a punishment for appellant's disobedience of the prior orders of the court. Thus, the thirty-day unconditional jail sentence was punishment for indirect criminal contempt.
 {¶ 47} Appellant's first Assignment of Error is therefore overruled.
 II. {¶ 48} Appellant in her second assignment of error argues that the trial court erred in proceeding on the contempt hearing because a mistake was made on her notice as to the time of the hearing. We disagree.
 {¶ 49} Upon review, we find that the record reflects that Appellant was notified by court personnel as to the correct time of the hearing being 9:00 a.m. rather than 1:00 p.m. as shown on the notice received by Appellant. The Motion to Continue faxed to the Court by Appellant was evidence of the fact that she knew the correct time of the hearing. Furthermore, Appellant failed to show at either 9:00 a.m. or 1:00 p.m.
 {¶ 50} Appellant's second Assignment of Error is therefore overruled.
 III. {¶ 51} Appellant in her third assignment of error argues that the trial court erred in proceeding with the contempt hearing when the matter of disqualification was still pending before the Ohio Supreme Court. We disagree.
 {¶ 52} The procedure for disqualification of judges is governed by R.C. § 2701.03, which provides, in pertinent part:
 {¶ 53} "(A) If a judge of the court of common pleas allegedly is interested in a proceeding pending before the court, allegedly is related to or has a bias or prejudice for or against a party to a proceeding pending before the court or a party's counsel, or allegedly otherwise is disqualified to preside in a proceeding pending before the court, any party to the proceeding or the party's counsel may file an affidavit of disqualification with the clerk of the supreme court in accordance with division (B) of this section.
 {¶ 54} "(B) An affidavit of disqualification filed under section 2101.39 or 2501.13 of the Revised Code or division (A) of this section shall be filed with the clerk of the supreme court not less than seven calendar days before the day on which the next hearing in the proceeding is scheduled and shall include all of the following:
 {¶ 55} "* * *
 {¶ 56} "(D)(1) Except as provided in divisions (D)(2) to (4) of this section, if the clerk of the supreme court accepts an affidavit of disqualification for filing under divisions (B) and (C) of this section, the affidavit deprives the judge against whom the affidavit was filed of any authority to preside in the proceeding until the chief justice of the supreme court, or a justice of the supreme court designated by the chief justice, rules on the affidavit pursuant to division (E) of this section.
 {¶ 57} "(2) A judge against whom an affidavit of disqualification has been filed under divisions (B) and (C) of this section may do any of the following that is applicable:
 {¶ 58} "(a) If, based on the scheduled hearing date, the affidavit was not timely filed, the judge may preside in the proceeding.
 {¶ 59} "(b) If the proceeding is a domestic relations proceeding, the judge may issue any temporary order relating to spousal support pendente lite and the support, maintenance, and allocation of parental rights and responsibilities for the care of children.
 {¶ 60} "(c) If the proceeding pertains to a complaint brought pursuant to Chapter 2151. or 2152. of the Revised Code, the judge may issue any temporary order pertaining to the relation and conduct of any other person toward a child who is the subject of a complaint as the interest and welfare of the child may require.
 {¶ 61} "(3) A judge against whom an affidavit of disqualification has been filed under divisions (B) and (C) of this section may determine a matter that does not affect a substantive right of any of the parties.
 {¶ 62} "(4) If the clerk of the supreme court accepts anaffidavit of disqualification for filing under divisions (B) and(C) of this section, if the chief justice of the supreme court,or a justice of the supreme court designated by the chiefjustice, denies the affidavit of disqualification pursuant todivision (E) of this section, and if, after the denial, a secondor subsequent affidavit of disqualification regarding the samejudge and the same proceeding is filed by the same party whofiled or on whose behalf was filed the affidavit that was deniedor by counsel for the same party who filed or on whose behalf wasfiled the affidavit that was denied, the judge against whom thesecond or subsequent affidavit is filed may preside in theproceeding prior to the ruling of the chief justice of thesupreme court, or a justice designated by the chief justice, onthe second or subsequent affidavit.
 {¶ 63} "* * *" (emphasis added).
 {¶ 64} Based on the exception contained in R.C. §2701.03(D)(4), we find that not only was the magistrate in the case sub judice not prohibited from presiding over the hearing, Judge Stucki could have presided over said hearing.
 {¶ 65} Appellant's third Assignment of Error is therefore overruled.
 (Case No. 2005CA00194) I., II., III. {¶ 66} Appellant's first, second and third assignments of error in this appeal challenge the trial court's award of child support in the January 12, 2001, Judgment Entry.
 {¶ 67} Appellant argues that she was never served with a copy of the trial court's January 12, 2001, Judgment Entry as required by Civ.R. 58(B) and because the clerk did not make a notation of same in the court file.
 {¶ 68} Civ.R. 58(B) provides:
 {¶ 69} "(B)Notice of filing
 {¶ 70} "When the court signs a judgment, the court shall endorse thereon a direction to the clerk to serve upon all parties not in default for failure to appear notice of the judgment and its date of entry upon the journal. Within three days of entering the judgment upon the journal, the clerk shall serve the parties in a manner prescribed by Civ. R. 5(B) and note the service in the appearance docket. Upon serving the notice and notation of the service in the appearance docket, the service is complete. The failure of the clerk to serve notice does not affect the validity of the judgment or the running of the time for appeal except as provided in App. R. 4(A)."
 {¶ 71} Civ.R. 5(B) provides:
 {¶ 72} "(B) Service: how made
 {¶ 73} "Whenever under these rules service is required or permitted to be made upon a party who is represented by an attorney of record in the proceedings, the service shall be made upon the attorney unless service upon the party is ordered by the court. Service upon the attorney or party shall be made by delivering a copy to the person to be served, transmitting it to the office of the person to be served by facsimile transmission,mailing it to the last known address of the person to be servedor, if no address is known, leaving it with the clerk of thecourt. The served copy shall be accompanied by a completed copy of the proof of service required by division (D) of this rule. "Delivering a copy" within this rule means: handing it to the attorney or party; leaving it at the office of the person to be served with a clerk or other person in charge; if there is no one in charge, leaving it in a conspicuous place in the office; or, if the office is closed or the person to be served has no office, leaving it at the dwelling house or usual place of abode of the person to be served with some person of suitable age and discretion then residing in the dwelling house or usual place of abode. Service by mail is complete upon mailing. Service by facsimile transmission is complete upon transmission." (emphasis added).
 {¶ 74} Actual knowledge of the judgment, however, is not sufficient to start the time for appeal. Wheeler v. Denny'sInc. (Mar. 11, 1993), Montgomery App. No. 13517; Welsh v.Tarentelli (1992), 76 Ohio App.3d 831, 603 N.E.2d 399. As stated in Whitehall ex rel. Fennessy v. Bambi Motel (1998),131 Ohio App.3d 734, 723 N.E.2d 633, "receiving a copy of the judgment is not enough. Service of both the notice of the judgment and its date of entry upon the journal is required. Even then, the time for appeal does not start to run until the clerk makes a notation of the service in the appearance docket. Civ.R. 58(B)." Id. at 741, 723 N.E.2d 633.
 {¶ 75} Upon review of the January 12, 2001, Judgment Entry, we find that last page indicates that such Entry was mailed to Appellant in compliance with Civ.R. 5(B). We further find that Appellant was, in fact aware of the contents if such Entry in that she filed three separate motions to modify such Entry. However, there is no notation in the appearance docket as to when service was made on Appellant, as required by Civ.R. 58.
 {¶ 76} Accordingly, if, as the record suggests, the date of entry on the journal by the clerk, in accordance with Civ.R. 58(B), did not occur, Appellant's time to appeal that ruling has never begun to run. See In re Anderson, 92 Ohio St.3d 63,748 N.E.2d 67, 2001-Ohio-131; Nieman, supra; In re Ratliff,
Clermont App. Nos. CA2001-03-033, CA2001-05-050, 2002-Ohio-2070 at n. 1. Thus, we find the instant appeal to be timely filed.
 {¶ 77} However, not withstanding such timeliness, Appellant's arguments are nonetheless barred by the doctrine of res judicata in that she failed to raise these argument in her appeal in Case No. 2003CA00215.
 {¶ 78} Such arguments are likewise barred by the doctrine of waiver for failure to raise these arguments before the trial court. It is well established that a party cannot raise any new issues or legal theories for the first time on appeal." Dolan v.Dolan, 11th Dist. Nos. 2000-T-0154 and 2001-T-0003,2002-Ohio-2440, at ¶ 7, citing Stores Realty Co. v. Cleveland
(1975), 41 Ohio St.2d 41, 43, 322 N.E.2d 629. "Litigants must not be permitted to hold their arguments in reserve for appeal, thus evading the trial court process." Nozik v. Kanaga (Dec. 1, 2000), 11th Dist. No. 99-L-193, 2000 Ohio App. LEXIS 5615.
 {¶ 79} Appellant's first, second and third Assignments of Error are therefore overruled.
 IV. {¶ 80} Appellant in her fourth assignment of error argues that the trial court erred in failing to rule upon her motion to vacate the trial court's interim child support order, filed February 11, 1998. We disagree.
 {¶ 81} Appellant acknowledges that the trial court did, in fact, overrule her motion to vacate in its October 7, 1998, but further argues that the trial court's Nov 25, 1998, Entry vacating those parts of the October 7, 1998, stayed by the pending bankruptcy, that the decision to overrule her motion to vacate the interim child support order was likewise vacated.
 {¶ 82} We find that Appellant's arguments are barred by the doctrines of res judicata and waiver, as stated above.
 {¶ 83} We further find that the trial court did in fact rule on such motion to vacate, overruling same in its Entry of October 7, 1998, and that that part of the Entry was not vacated by the later November 25, 1998, instigated by the bankruptcy.
 {¶ 84} Appellant's fourth Assignment of Error is therefore overruled.
 {¶ 85} The decision of the Stark County Court of Common Pleas, Domestic Relations division is affirmed.
Boggins, J. Gwin, P.J. concurs Hoffman, J. concurs separately.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Stark County, Domestic Relations Division, Stark County, Ohio, is affirmed. Costs assessed to Appellant.