Hoffman, J.
{¶ 1} Plaintiff-Appellant Patti A. Zifer fka Huffman appeals the May 17, 2017 judgment entry of the Tuscarawas County Court of Common Pleas.
FACTS AND PROCEDURAL HISTORY
{¶ 2} Plaintiff-Appellant Patti A. Zifer fka Huffman filed a complaint for divorce with the Tuscarawas County Court of Common Pleas against her husband, Defendant-Appellee Steven J. Huffman.
{¶ 3} Thereafter Zifer and Huffman were granted a Decree of Divorce and on May 16, 2014, the trial court issued an agreed judgment entry regarding spousal support:
1. Spousal Support: Steven J. Huffman shall pay as and for spousal support to Patti A. Huffman the sum of $1,000.00 per month, plus processing fee, for a period of seven years and three months beginning June 1, 2014. The spousal support shall continue until Patti A. Huffman (nka Zifer) remarries, dies, or co-habitates with a non-relative male. The Court shall not have continuing jurisdiction over the issue of the amount of spousal support or the years of payment.
{¶ 4} On February 12, 2016, the trial court filed a judgment entry ordering an initial continue to seek work order. Based on information furnished by the Tuscarawas County Child Support Enforcement Agency, the trial court determined Huffman *916 was unemployed and had no income. It further determined Huffman was able to engage in employment. Pursuant to R.C. 3121.03(D)(1), the trial court ordered Huffman to seek employment at 30 places per month and provide written proof to Tuscarawas County CSEA.
{¶ 5} On January 4, 2017, Zifer filed a motion to show cause with the trial court alleging Huffman failed to pay spousal support pursuant to the terms of the May 16, 2014 agreed judgment entry. According to the Tuscarawas County CSEA records, Huffman was $5,744.00 in arrears as of November 30, 2016.
{¶ 6} The matter was set for a hearing before the magistrate on February 27, 2017. Zifer presented exhibits from the Tuscarawas County CSEA that demonstrated as of February 2017, Huffman was in arrears in the amount of $7,542.00. Zifer requested the trial court find Huffman in contempt of the May 16, 2014 agreed judgment entry, order Huffman to pay the arrearage within 30 days, and impose a 30-day term of jail if Huffman did not remedy the arrearage.
{¶ 7} Huffman testified he was not contesting that he was delinquent in his spousal support payments. He argued he was not in willful contempt of the trial court's orders to pay spousal support because he had no income due to his unemployment. Huffman has been a licensed pharmacist since 1984. (T. 17). At the time of the parties' divorce, Huffman was employed at CVS Pharmacy earning $120,000 per year. In prior years, his taxable earnings were $128,000.00 and $110,679.00. (T. 17).
{¶ 8} On March 6, 2015, the Ohio State Board of Pharmacy found Huffman improperly dispensed prescription medicine in violation of the Ohio Revised Code. The Board imposed a monetary penalty, required him to obtain additional continuing pharmacy education, and prohibited Huffman from filling prescriptions for self and family members. In October 2015, CVS terminated Huffman's employment because Huffman failed to properly document an error when filling a prescription.
{¶ 9} Huffman argued that based on the Ohio State Board of Pharmacy Order and his termination from CVS, he was unable to find full-time employment as a pharmacist. Huffman testified he was current on his spousal support until he lost his job. (T. 10). After his termination from CVS, Huffman stated he continued to make spousal support payments using his retirement fund and taxes. (T. 13). He was not aware when he started to fall behind on his spousal support payments. (T. 13). In 2016, his taxable earnings were approximately $20,000.00. (T. 16).
{¶ 10} After Huffman was terminated from CVS, he received unemployment benefits. He was not aware if spousal support was paid out of the benefits. (T. 18). As part of unemployment, he had to apply for at least two jobs a week for approximately eighteen months. (T. 14). He testified he applied for two jobs in pharmacy every week, but he just didn't get any work. (T. 14). He was hired by a staffing service and applied to a position as a pharmacist but he was not hired based on the background check. (T. 14). In January 2017, he started working as an occasional pharmacist at a local drug store earning $50.00 per hour. (T. 15). He testified he recently earned $650.00 from this position and paid Zifer $250.00 from his paycheck. (T. 14). Huffman testified he was also working in a manual labor job earning minimum wage. (T. 13). Huffman applied for a license transfer to West Virginia to work with the West Virginia University of Medicine. (T. 19). He stated he did not have income to make his house payment and meet his spousal support obligation. (T. 14).
*917 {¶ 11} On March 22, 2017, the magistrate issued her recommendation that Huffman was in contempt of the May 16, 2014 agreed judgment entry for his failure to pay spousal support. She determined the evidence demonstrated Huffman was severely underemployed. The magistrate recommended that Huffman be sentenced to 30 days in jail, which would be suspended if Huffman complied with the purge conditions. As purge conditions, the magistrate recommended that Huffman seek work at 30 places of businesses per month and should return work seeking forms to the Tuscarawas County CSEA. He should also pay a minimum $50.00 per month towards his spousal support. If Huffman failed to meet the purge conditions, Zifer was to file a motion to impose jail sentence.
{¶ 12} Zifer and Huffman filed objections to the magistrate's decision. The trial court held an oral hearing on the parties' objections. On May 17, 2017, the trial court issued its judgment entry overruling Zifer's objections and sustaining Huffman's objections to the magistrate's decision to find Huffman in contempt. The trial court found Zifer did not demonstrate by clear and convincing evidence that Huffman intentionally and willfully violated the May 16, 2014 agreed judgment entry to pay spousal support. The trial court stated while it was clear Huffman did not pay the agreed spousal support, his failure to pay resulted from the "unfortunate" loss of employment by Defendant as a pharmacist and the resulting drastic elimination of annual income has prevented him from complying with the Court Orders. (Judgment Entry, May 17, 2017). The trial court found Huffman made reasonable efforts to find employment in the pharmaceutical field, but had "simply been unsuccessful due to no fault of the Defendant or a lack of effort on his part to become re-employed in that field." (Judgment Entry, May 17, 2017).
{¶ 13} The trial court awarded Zifer a judgment in the amount of $7,542.00, the amount of spousal support in arrearage from January 31, 2017, for Zifer to collect. The trial court concluded:
* * * going forward this Court does not have legal authority to modify the terms and conditions of spousal support agreed upon by the parties * * *. Consequently, should the Plaintiff, in the future, believe that the Defendant has intentionally and willfully disregarded the orders of the Court relative to the payment of spousal support and the [sic] he has the economic/financial ability to comply with those orders, her only remedy would be to file a novel Motion seeking Indirect Civil Contempt of Court Sanctions against the Defendant for the alleged Indirect Civil Contempt conduct and prove it by clear and convincing evidence.
(Judgment Entry, May 17, 2017).
{¶ 14} It is from this judgment entry Zifer now appeals.
ASSIGNMENTS OF ERROR
{¶ 15} Zifer raises three Assignments of Error:
{¶ 16} "I. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN FAILING TO APPLY O.R.C. 2705.031(B) AND (E) TO THE FACTS OF THE CASE.
{¶ 17} "II. THE TRIAL COURT ABUSED ITS DISCRETION IN FINDING THAT APPELLEE'S CONTEMPT SHOULD BE EXCUSED BECAUSE OF APPELLEE'S 'UNFORTUNATE LOSS OF EMPLOYMENT' PREVENTED HIM FROM COMPLYING WITH THE SPOUSAL SUPPORT ORDER.
*918 {¶ 18} "III. THE TRIAL COURT ABUSED ITS DISCRETION IN GRANTING A JUDGMENT AGAINST APPELLEE, A REMEDY NOT REQUESTED BY EITHER PARTY BUT WHICH REMEDY INCREASES THE COSTS OF COLLECTION TO THE INJURED PARTY AND REMOVES CSEA FROM COLLECTION OF AMOUNTS DUE OBLIGEE."
ANALYSIS
{¶ 19} Zifer argues in her three Assignments of Error that the trial court abused its discretion when it overruled the magistrate's decision and found Huffman was not in contempt of the May 16, 2014 agreed judgment entry to pay $1,000.00 in spousal support every month.
I. R.C. 2705.031
{¶ 20} In Zifer's first Assignment of Error, Zifer contends the trial court did not apply R.C. 2705.031(B) or (E) to the facts of the case. R.C. 2705.031(B)(1) states, "Any party who has a legal claim to any support ordered for a child, spouse, or former spouse may initiate a contempt action for failure to pay the support." R.C. 2705.031(E) states,
The imposition of any penalty for contempt under section 2705.05 of the Revised Code shall not eliminate any obligation of the accused to pay any past, present, or future support obligation or any obligation of the accused to comply with or refrain from interfering with the parenting time or visitation order or decree. The court shall have jurisdiction to make a finding of contempt for the failure to pay support and to impose the penalties set forth in section 2705.05 of the Revised Code in all cases in which past due support is at issue even if the duty to pay support has terminated, and shall have jurisdiction to make a finding of contempt for a failure to comply with, or an interference with, a parenting time or visitation order or decree and to impose the penalties set forth in section 2705.05 of the Revised Code in all cases in which the failure or interference is at issue even if the parenting time or visitation order or decree no longer is in effect.
{¶ 21} In this case, there was no dispute in the record that Zifer had a legal claim to spousal support pursuant to the May 16, 2014 agreed judgment entry. Neither Huffman nor the trial court stated Zifer could not initiate a contempt action under R.C. 2705.031(B) for Huffman's admitted failure to pay spousal support. R.C. 2705.031(E) gives the trial court jurisdiction to find Huffman in contempt for his failure to pay support and impose penalties. The language of the statute, however, does not require the trial court to find the non-paying spouse in contempt if a contempt action is initiated. A contempt action does not subsume a finding of contempt. It is the duty of the trial court to determine whether the party is in contempt and the issue in this case is whether Huffman was in contempt of the May 16, 2014 agreed judgment entry for his failure to pay spousal support. Zifer's first Assignment of Error is overruled.
II. Contempt
{¶ 22} Zifer's second Assignment of Error contends the trial court abused its discretion when it found Huffman was not in contempt for his failure to pay spousal support. A trial court's decision regarding contempt will not be reversed absent an abuse of discretion. Gunawardena v. Gunawardena , 5th Dist. Delaware No. 14 CAF 06 0035, 2015-Ohio-2566, 2015 WL 3935793, ¶ 1 citing Beltz v. Beltz , 5th Dist. Stark Nos. 2005CA00193, 2005CA00194, 2006-Ohio-1144, 2006 WL 587566. In order to find an abuse of discretion, *919 we must determine the trial court's decision was unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore , 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).
{¶ 23} "Civil contempt is defined as that which exists in failing to do something ordered to be done by the court in a civil action for the benefit of the opposing party therein." Mohr v. Mohr , 5th Dist. Morgan No. 16AP0007, 2017-Ohio-1044, 2017 WL 1090984, ¶ 15 quoting McKinney v. McKinney , 5th Dist. Stark No. 2014CA00118, 2015-Ohio-1114, 2015 WL 1331886, ¶¶ 11-12 quoting Beach v. Beach , 99 Ohio App. 428, 431, 130 N.E.2d 164 (1955). "It is irrelevant that the transgressing party does not intend to violate the court order." Pedone v. Pedone , 11 Ohio App.3d 164, 165, 463 N.E.2d 656 (8th Dist.1983). "If the dictates of the judicial decree are not followed, a contempt citation will result." Id.
{¶ 24} If a party makes a good faith effort to pay support, contempt is not justified. Slish v. Slish , 5th Dist. Stark No. 2011CA00080, 2012-Ohio-1517, 2012 WL 1139160, ¶ 28 citing Raleigh v. Hardy, 5th Dist. No. 08 CA 0140, 2009-Ohio-4829, 2009 WL 2933727, ¶ 47 citing Courtney v. Courtney, 16 Ohio App.3d 329, 475 N.E.2d 1284 (3rd Dist.1984). The burden to show an inability to pay is on the party being held in contempt. Id. citing Farrell v. Farrell, 5th Dist. No. 2008-CA-0080, 2009-Ohio-1341, 2009 WL 765185, ¶ 15.
{¶ 25} The magistrate determined Huffman did not demonstrate he had made a good faith effort to pay support because she found him to be "severely underemployed." (Magistrate's Decision, Mar. 22, 2017). The magistrate concluded Huffman's inability to pay support was based on Huffman's own actions resulting in sanctions and termination. Since that time, Huffman stated he was unable to find employment as a full-time pharmacist. Upon its independent review of the record pursuant to the parties' objections, the trial court found that due to Huffman's "unfortunate loss of employment" and his inability to obtain employment through "no fault" of his own, Huffman demonstrated a good faith effort to pay and his inability to pay. (Judgment Entry, May 17, 2017).
{¶ 26} The trial court is required to conduct an independent review of a magistrate's decision. Lambert's Pop A Top, LLC v. Mills , 5th Dist. Stark No. 2017CA00092, 2017-Ohio-8073, 2017 WL 4423243.
{¶ 27} This court reviewed the meaning of "abuse of discretion" in State v. Firouzmandi , 5th Dist. Licking No. 2006-CA-41, 2006-Ohio-5823, 2006 WL 3185175, ¶¶ 54-55 :
This term however has been applied in a somewhat rote manner by the courts without analysis of the true purpose of the appellate court's role in the review of a trial court's discretionary powers. An excellent analysis of the misconception surrounding the concept of "abuse of discretion" was set forth by the Arizona Supreme Court sitting en banc: "[t]he phrase 'within the discretion of the trial court' is often used but the reason for that phrase being applied to certain issues is seldom examined. One of the primary reasons an issue is considered discretionary is that its resolution is based on factors which vary from case to case and which involve the balance of conflicting facts and equitable considerations. Walsh v. Centeio, 692 F.2d 1239, 1242 (9th Cir.1982). Thus, the phrase 'within the discretion of the trial court' does not mean that the court is free to reach any conclusion it wishes. It does mean that where there are opposing *920 equitable or factual considerations, we will not substitute our judgment for that of the trial court". State v. Chapple (1983), 135 Ariz. 281, 296-97, 660 P.2d 1208, 1223-24. However, the Court explained, "[t]he term 'abuse of discretion' is unfortunate. In ordinary language, 'abuse' implies some form of corrupt practice, deceit or impropriety. Webster's Third New International Dictionary (1976). In this sense, the application of the word to the act of a trial judge who ruled in accordance with all the decided cases on the issue is inappropriate. However, in the legal context, the word 'abuse' in the phrase 'abuse of discretion' has been given a broader meaning. In the few cases that have attempted an analysis, the ordinary meaning of the word has been considered inappropriate and the phrase as a whole has been interpreted to apply where the reasons given by the court for its action are clearly untenable, legally incorrect, or amount to a denial of justice. State ex rel. Fletcher v. District Court of Jefferson County, 213 Iowa 822, 831, 238 N.W. 290, 294 (1931). Similarly, a discretionary act which reaches an end or purpose not justified by, and clearly against, reason and evidence 'is an abuse.' Kinnear v. Dennis, 97 Okl. 206, 207, 223 P. 383, 384 (1924).
"The law would be better served if we were to apply a different term, but since most appellate judges suffer from misocainea, we will no doubt continue to use the phrase 'abuse of discretion.' Therefore, we should keep some operative principles in mind. Something is discretionary because it is based on an assessment of conflicting procedural, factual or equitable considerations which vary from case to case and which can be better determined or resolved by the trial judge, who has a more immediate grasp of all the facts of the case, an opportunity to see the parties, lawyers and witnesses, and who can better assess the impact of what occurs before him. Walsh v. Centeio, supra. Where a decision is made on that basis, it is truly discretionary and we will not substitute our judgment for that of the trial judge; we will not second-guess. Where, however, the facts or inferences from them are not in dispute and where there are few or no conflicting procedural, factual or equitable considerations, the resolution of the question is one of law or logic. Then it is our final responsibility to determine law and policy and it becomes our duty to 'look over the shoulder' of the trial judge and, if appropriate, substitute our judgment for his or hers. This process is sometimes, unfortunately, described as a determination that the trial judge has 'abused his discretion ...' " Id. at n. 8 ; State v. Garza (1998), 192 Ariz. 171, 175-76, 962 P.2d 898, 902.
{¶ 28} With those words as guidance, we review the trial court's decision to overrule the magistrate's decision and to find that Huffman was not in contempt of the May 16, 2014 agreed judgment entry.
{¶ 29} The magistrate held an evidentiary hearing on Zifer's contempt action where Huffman testified. In its judgment entry, the trial court stated it reviewed the judgment entries related to the parties' divorce, the parties' objections, the transcript of the magistrate's hearing, and held an oral hearing on the parties' objections. Upon the magistrate's consideration of the evidence, the magistrate found Huffman was in contempt of the May 16, 2014 agreed judgment entry because Huffman did not demonstrate a good faith effort to pay the support and his inability to pay support because of Huffman's own actions. Upon the trial court's consideration of the record, it found Huffman was not in contempt because he demonstrated a good *921 faith effort to pay support and Huffman was unable to pay support based on actions outside of Huffman's control.
{¶ 30} It has been held that in order for the obligor to successfully raise the claim of inability to pay spousal support, he must prove he did not voluntarily create the disability for avoiding payment. Boddie v. Boddie , 2nd Dist. Montgomery No. CA 9637, 1986 WL 8525 (Aug. 1, 1986), *2 citing Bingmer v. Bingmer , 72 Ohio App. 522, 53 N.E.2d 525 (2nd. Dist. 1943). The obligor's inability must be real and not self-imposed. Boddie, supra citing State v. Cook , 66 Ohio St. 566, 64 N.E. 567 (1902). "Cases are not always 'clear-cut' upon the distinction between whether inability to pay is voluntary or involuntary." Bostick v. Bostick , 2nd Dist. Champaign No. 2015-CA-13, 2016-Ohio-3354, 2016 WL 3216748, ¶ 11 quoting. A defendant cannot shield himself from a finding of contempt by making mere allegations he is unable to pay, without any supporting evidentiary material. Haas v. Myers , 5th Dist. Stark No. 2015CA00217, 2016-Ohio-3316, 2016 WL 3184918, ¶ 37 citing Walters v. Murphy , 5th Dist. Ashland No. 2006-COA-030, 2007-Ohio-3426, 2007 WL 1934730, ¶ 9, citing Spring v. Spring , 5th Dist. Tuscarawas No. 95AP080058, 1996 WL 243878 (April 17, 1996). At a minimum, a defendant should present evidence he had made a good-faith effort to comply with the court's order. Id. , citing Stocker v. Couts , Tuscarawas App. No. 94AP070046, 1995 WL 347851 (March 13, 1995). A review of the case law as to contempt cases, and specifically the issue of inability to pay, shows the resolution of the case turns on the evidence presented.
{¶ 31} The issue in this case is whether Huffman met his burden to demonstrate the inability to pay. The magistrate and trial court reached different conclusions as to this issue.[1] This case may be an example that sometimes there is no clear cut distinction whether the inability to pay is voluntary or involuntary.
{¶ 32} The evidence demonstrated Huffman's income prior to 2015, was over $100,000. He had been sanctioned for a past pharmacy violation in March, 2015. His employment with CVS was terminated for a subsequent internal violation. His license to work as a pharmacist, however, remained in place.
{¶ 33} The circumstances surrounding that later internal violation which precipitated his termination from CVS are important when analyzing the trial court's determination Huffman suffered an "unfortunate" loss of employment. Huffman explained he had misfilled a prescription for Percocet calling for seven and one-half milligrams with only five milligrams of Percocet. After the patient [customer] left, he caught his error and called the patient to notify him. The patient came back and Huffman changed the prescription to the correct strength. However, he failed to fill out a report documenting the misfilled prescription and was let go by CVS as a result.
{¶ 34} While Huffman's decision to not complete a misfill report was voluntary, it was the result of his negligence,[2] not an intentional act. He did not fail to file the report intending to create a reason to be terminated. Huffman did not voluntarily create the event triggering his termination in order to avoid payment of his spousal *922 support obligation. We find, the trial court's characterization of the incident as "unfortunate" does not demonstrate an abuse of discretion.
{¶ 35} The trial court further found Huffman made reasonable efforts to become re-employed in the field of pharmacy. In order to receive his unemployment benefits, Huffman was required to seek at least two jobs in pharmacy every week. Huffman testified he started working as an occasional pharmacist at a local drug store earning $50.00 per hour. He had earned $650.00 from that position and paid Zifer $250.00 from his paycheck. He testified he also was working in a manual labor job earning minimum wage. He had applied for a license transfer to West Virginia to work with the West Virginia University of Medicine.
{¶ 36} After his termination from CVS, Huffman continued to pay spousal support from his retirement benefits and his tax refund, but testified he eventually ran out of money. He was behind on his house mortgage and facing foreclosure.
{¶ 37} We find the trial court did not abuse its discretion in finding Huffman had an inability to pay the spousal support order, even though he was underemployed. We further find the trial court did not abuse its decision in overturning the magistrate's recommendation of a finding Huffman was in contempt.
{¶ 38} Appellant's second assignment of error is overruled.
III.
{¶ 39} Herein, Zifer asserts the trial court committed error in reducing the arrearages owed by Huffman to judgment. We disagree.
{¶ 40} Zifer maintains Tuscarawas County CSEA was providing collection services to Zifer pursuant to law. The only statutory citation proffered by Zifer is R.C. 3125.36. That section involves child support orders, not spousal support orders.
{¶ 41} A trial court has the power to reduce spousal support arrearages to a lump sum judgment. Davis v. Davis , (1983), 12 Ohio App.3d 38, 40, 465 N.E.2d 917. CSEA can withhold wages to enforce a lump sum judgment for arrearages. Boyer v. Boyer , 9th Dist. Medina Co. No. 03CA0137-M, 2004-Ohio-5450, 2004 WL 2293197.
{¶ 42} Contrary to Zifer's interpretation of the trial court's order determining the arrearage amount, we do not find it strips CSEA of its authority to continue to collect on the arrearages and/or any further spousal support obligations of Huffman. The recognition of Zifer's ability to pursue execution is not the equivalent of withdrawing CSEA's authority to continue to collect he same.
{¶ 43} Appellant's third assignment of error is overruled.
{¶ 44} The judgment of the Tuscarawas County Court of Common Pleas is affirmed.
Gwin, J., concurs,

A trial court need not defer to the magistrate's determinations regarding witness credibility. Bressler v. Nunemaker , 5th Dist., Licking App. No. 17CA06, 2017-Ohio-5804, 2017 WL 2964199.

Appellant's brief likewise describes Huffman's actions as negligence. (Appellant's brief at p.7).